OPINION
David Dodd was found guilty of aggravated burglary with a firearm specification by a jury in the Greene County Court of Common Pleas. He was sentenced to four years on the aggravated burglary charge and three years on the firearm specification, to be served consecutively.
The state's evidence established the following facts.
At approximately 9:30 p.m. on January 16, 2000, Lance Watts, James Deleece, and Dodd, rang the doorbell of Daniel and Marsha Alexander's home. When Mr. Alexander answered the door, Watts struck Mr. Alexander in the head with the butt of a gun and then struggled with Mr. Alexander while Deleece went downstairs to look for marijuana. Mr. Alexander called to his wife, who was in the bedroom watching television. She ran down the hallway and found a man in the hallway. Mrs. Alexander testified that the man was white, with black hair and a black goatee, and that he was skinny and slightly taller than her. The individual grabbed her and threw her into a living room chair. After she had been thrown into the chair, another individual stood in front of her. He was tall and skinny and had a white wrapping around his head.
Mrs. Alexander observed the bearded man running up and down the hallway, and the man with the wrap on his head going toward her dining room. Mrs. Alexander testified that she had heard two gun shots coming from the dining room, and then the man with the wrap had returned to stand in front of her again. She then observed her husband struggling with the bearded man for the gun. The struggle ended when both the bearded man and the man with the wrap went out the front door. Mr. Alexander then closed the door and yelled for her to call the police. She did not see the third man leave her home. Mrs. Alexander also testified to hearing the man with the gun say, "D, come help me. He won't let go of the gun."
Mr. Alexander testified to the same events as his wife. He answered the door and was hit on the head with the butt of a gun. He began to struggle with the man who had the gun. He yelled for his wife, and she came out into the hallway and was thrown into a chair by the man with the wrap around his head. He also testified that he had seen the third man run down the stairs to the basement. The man with whom Mr. Alexander was struggling yelled, "I can't get the gun away from him. He won't let go. I need help." The struggle then moved to the dining room where the gun went off twice. At that time, Mr. Alexander realized that the gun was a pump shotgun, and he was afraid because he did not know how many more shells were in the gun. Mr. Alexander redoubled his efforts and got the man with the gun out the front door, then he told his wife to call 911. He did not see the man with the white wrap on his head leave, but he saw the third man come up from the basement and run out the front door.
Mrs. Alexander was unable to identify any of the perpetrators; however, Mr. Alexander identified Watts as the man with the gun, with whom he had struggled.
Following the testimony of the Alexanders, the state called Deleece, who had already been sentenced for his part in the burglary of the Alexanders' home. Deleece testified that Dodd had not been present at the Alexanders' home. The trial court declared Deleece to be a hostile witness upon the state's representation that his testimony was inconsistent with his prior statements. Deleece admitted his part in the burglary but testified that he had lied when he had previously stated that Dodd had been present. He stated that he had been angry at Dodd and that he had been scared. He testified that he and Watts had gone to the Alexanders' home and that they had been alone. He went downstairs to look for drugs. He heard two gunshots and ran up the stairs and out of the house to the van. He and Watts then went to the house of a man named "Six Nine" to clean the blood off themselves, then they went to a friend, Roger Hardin's, house. While he admitted that he had consistently told the police that Dodd had been with them, he maintained that he had lied and stated that he "[couldn't] send an innocent man to prison."
Detective Mark Stannard testified that during interviews Deleece had stated that Dodd had been involved in the crime. Stannard also testified that Watts had admitted his involvement in the crime as the man with the shotgun and that Watts had told them that Dodd had also been involved and had been the man who stood guard over Mrs. Alexander. Watts also told them that Pat Butcher and Derrick Wong (aka "Six Nine") had had contact with Deleece, Watts, and Dodd following the crime.
Watts testified and admitted to his role in the burglary. He testified that he had not yet been sentenced for the crime, although he had already pled guilty. Watts stated that he had met up with Dodd and Deleece at Roger Hardin's house. He told them that he had heard that the Alexanders had fifty pounds of marijuana in their home and asked them if they wanted to break into the Alexanders' home. Their friend, Hardin, let them use his gun. Watts, Deleece, and Dodd then went to Butcher's and Wong's houses to see if they had any gloves. When they arrived at the Alexanders' house, Deleece knocked on the door, and when Mr. Alexander answered, Watts hit him with the gun. Watts testified that Dodd had had a red shirt around his face. Watts and Mr. Alexander struggled for the gun, and Watts fired the gun twice. He asked Deleece and Dodd to help him get Mr. Alexander off the gun, and they hit him, then Deleece ran downstairs. Dodd stood over Mrs. Alexander watching her while Watts and Mr. Alexander struggled for the gun. Mr. Alexander pushed Dodd and Watts out the front door and locked it, while Deleece was still in the house. Deleece also got out of the house, and the three went to Wong's house to wash off the blood. Then they went back to Hardin's house, and he told them to get rid of the gun, so they hid the gun at Dodd's house. Watts then went back to Hardin's house, where there was a party, and he saw Dodd there.
Butcher testified that Dodd had come to his house asking to borrow a pair of gloves. Butcher gave him a pair of brown gardening gloves, but Dodd stated that he was looking for latex gloves. Butcher did not, however, recall the date that this occurred.
Cleo and Derrick Wong both testified that, when Watts, Deleece, and Dodd had come to their house around 9:30 on January 16, 2000, they had seemed nervous and had had blood on their clothing. Dodd went into the bathroom and cleaned up. The three men then listened to the Wongs' police scanner and left when they heard that the police were looking for people involved in a home invasion on McIntire, which was where the Alexanders lived. They also testified that Dodd's mother had made a request of them in the week following the crime, and that they had answered by stating that they would not lie for anybody. Derrick Wong also testified that Dodd had been to his home earlier in the day, at around 8:30 p.m., looking for rubber gloves.
Dodd presented testimony from Freddy Tipton, who testified that he had had dinner with Dodd, Dodd's girlfriend, Watts, and Deleece on January 16, 2000. Dodd and his girlfriend arrived at Hardin's house, where Tipton lived, sometime between 5:30 and 6:00. Deleece made a phone call, then he and Watts left with a gun. Dodd and his girlfriend left an hour later when Dodd's mother came to pick him up. Tipton did not see Dodd again that night, but he did see Watts and Deleece, who came to Hardin's house covered in blood. Watts stated that he thought they had killed someone. Watts and Deleece had a gun with them, and Tipton asked them to leave.
Bridgette Lavin testified that she had seen Dodd at a party on the night of January 16, 2000 at the home of David and Phyllis Howard. She stated that she had first seen Dodd at about 8:00 p.m. and that she had spoken to him at around 8:15 and again at approximately 8:55 when she had left the party. She also testified that these parties had occurred on a weekly basis. However, she remembered that particular one because the next day had been Martin Luther King, Jr. Day.
Amy Kurrek was also at the Howards' party on January 16, 2000. She arrived at the party around 8:00 p.m. She saw Dodd throughout the party, and when she left at 10:45, he was passed out on the couch.
Finally, Dodd testified that he and his girlfriend had had dinner with Hardin on January 16, 2000, arriving at approximately 5:30 p.m. and leaving at approximately 7:00 p.m. His mother picked them up, and they went to K-Mart. They then went to the Howards' party, arriving at approximately 8:00 p.m. He fell asleep at 11:00 p.m. and left around 1:00 a.m. on January 17, 2000. He stated that he had never been to the Alexanders' home and that he had not been involved in the crime.
The jury found Dodd guilty of aggravated burglary with a firearm specification on March 30, 2001. The trial court sentenced Dodd to four years on the aggravated burglary count and three years on the firearm specification, to be served consecutively for a total of seven years.
Dodd appeals, raising one assignment of error.
 THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, 20 Ohio App.3d at 175.
We cannot find that the evidence in this case weighs heavily against Dodd's conviction. The state presented the testimony of Watts to establish that Dodd had been present. Although Deleece testified that Dodd had not been present, the state impeached him with his prior statements to the contrary, and his testimony that there had only been two perpetrators was contrary to that of the Alexanders, who both stated that there were three perpetrators. The state also presented the testimony of the Wongs and Butcher, who placed Dodd with Watts and Deleece at locations other than the party around the time of the crime. Although Dodd presented alibi testimony from Lavin and Kurrek, it was for the jury to decide whom to believe, and the jury clearly believed the state's version of events. Given the evidence presented by the state, we find that the jury's verdict was not against the manifest weight of the evidence.
Dodd's assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, J. and YOUNG, J., concur.